RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0223p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

CHARLES H. KLEIN, JR.; ANNETTE KLEIN; ERIC
HAVENS; SHANDRA HAVENS,

        *Plaintiffs-Appellants,*

     *v.*

UNITED STATES POSTAL SERVICE; MARY MITCHELL,
Postmaster, Georgetown Post Office, in her official
capacity; TERRENCE MANEY, Post Office Operations
Manager, in his official capacity,

        *Defendants-Appellees.*

No. 25-3965

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:24-cv-00672—Jeffery P. Hopkins, District Judge.

Argued: July 23, 2026

Decided and Filed: August 7, 2026

Before: BATCHELDER, MOORE, and THAPAR, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Richard Ganulin, Cincinnati, Ohio, for Appellants. Douglas C. Dreier, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Richard Ganulin, Cincinnati, Ohio, for Appellants. Douglas C. Dreier, Charles W. Scarborough, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. The United States Postal Service delivers the mail through snow, rain, heat, and gloom of night. It does not, however, deliver directly to certain residential addresses on Hillman Ridge Road in Brown County, Ohio. Unhappy with this situation, Plaintiffs Charles and Annette Klein and their neighbors Eric and Shandra Havens sued in federal district court. Asserting a "class of one" equal-protection claim, they argue that the Postal Service's failure to deliver the mail to their property violates the Constitution. Because their claim must instead be filed before the Postal Regulatory Commission, we AFFIRM the district court's dismissal of Plaintiffs' first amended complaint for lack of jurisdiction.

## I. BACKGROUND

### A. Legal Background

Our nation's semiquincentennial came this July 4, but our postal system reached the same milestone almost a year earlier. On July 26, 1775, the Continental Congress established a "[g]eneral post office" under the supervision of Benjamin Franklin, the first Postmaster General. 2 Journals of the Continental Congress 1774-1789, 208–09 (Government Printing Office 1905). Fourteen years later, the Constitution gave Congress the authority "[t]o establish Post Offices and post Roads." U.S. Const. art. I, § 8, cl. 7. For nearly two centuries, Congress vested in the Post Office Department the responsibility for delivering our nation's mail. *Nat'l Ass'n of Greeting Card Publishers v. U.S. Postal Serv.*, 462 U.S. 810, 813 (1983). This ended with the Postal Reorganization Act of 1970 ("PRA"), Pub. L. No. 91-375, 84 Stat. 719 (1970), which "established the United States Postal Service as an independent agency under the direction of an 11-member Board of Governors." *Greeting Card Publishers*, 462 U.S. at 813 (citing 39 U.S.C. §§ 201–02).

The PRA also created the Postal Rate Commission, an independent body with both rulemaking and oversight responsibilities. PRA § 2, 84 Stat. at 759–60 (39 U.S.C. §§ 3601–04).[1] In addition to these responsibilities, the PRA included a provision—codified at 39 U.S.C. § 3662 (entitled "Rate and service complaints")—creating a procedure for the Rate Commission to hear complaints by "[i]nterested parties who believe the Postal Service is charging rates which do not conform to the policies set out in this title or who believe that they are not receiving postal service in accordance with the policies of this title." *Id.* at 764 (39 U.S.C. § 3662). On review of such a complaint, the Rate Commission could recommend that the Postal Service's Board of Governors implement a remedy. *Id.* at 762 (39 U.S.C. § 3625). The Board's decision whether to adopt that recommendation was then reviewable by appeal to a "court of appeals of the United States." *Id.* at 763 (39 U.S.C. § 3628).

More than three decades later, Congress substantially amended the PRA by passing the Postal Accountability and Enhancement Act of 2006 ("PAEA"), Pub. Law. No. 109-435, 120 Stat. 3198. The PAEA redesignated the Postal Rate Commission as the Postal Regulatory Commission (hereinafter "Commission"). *Id.* § 604, 120 Stat. at 3241–42. The PAEA amended § 3662 as well, with that section now imbuing the Commission with the authority to hear complaints that "the Postal Service is not operating in conformance with the requirements of the provisions of sections 101(d), 401(2), 403(c), 404a, or 601." 39 U.S.C. § 3662(a). The Commission must act on such a complaint within 90 days by initiating proceedings or dismissing the complaint. *Id.* § 3662(b). If the Commission ultimately "finds the complaint to be justified, it shall order that the Postal Service take such action as the Commission considers appropriate in order to achieve compliance with the applicable requirements and to remedy the effects of any noncompliance." *Id.* § 3662(c). Either party—the complainant or the Postal Service—may then seek appellate review in the D.C. Circuit, which applies the Administrative Procedure Act's standards. *Id.* § 3663 (citing 5 U.S.C. § 706). Relevant here, 39 U.S.C. § 403(c) provides that the "Postal Service shall not, except as specifically authorized in this title, make any undue or unreasonable discrimination among users of the mails, nor shall it grant any undue or

---

[1]Because § 2 of the PRA encompasses all of the Act's additions to Title 39, we indicate the corresponding section of code (as enacted) for ease of reference.

unreasonable preferences to any such user." That subsection has remained unchanged since the PRA's passage. *See* PRA § 2, 84 Stat. at 723 (39 U.S.C. § 403(c)).

## B. Facts and Procedural Background

Plaintiffs live on Hillman Ridge Road, a single-lane road in Brown County, Ohio. R. 13 (FAC ¶¶ 12–13, 18) (Page ID #49, 50). In 2015, the local Postmaster approved a request to place a mailbox at the end of the Kleins' driveway. *Id.* ¶ 17 (Page ID #50). In 2017, however, the Postal Service stopped delivering to that mailbox. *Id.* ¶¶ 18–20 (Page ID #50–51). The Postmaster explained to the Kleins that the decision to discontinue direct delivery was because of a confrontation between one of Plaintiffs' neighbors and a mail carrier. *Id.* ¶ 18 (Page ID #50). Without direct delivery, Plaintiffs must now travel to a mailbox about half a mile down the road to retrieve letters and five miles into Georgetown, Ohio, for parcels. *Id.* ¶ 20 (Page ID #51).

In summer 2024, a "temporary Postmaster . . . informed Klein that he could restore the mailbox to the end of his driveway," but then retracted this promise after a "carrier refused to travel the subject portion of the road and did not deliver mail to Klein." *Id.* ¶ 24 (Page ID #51–52). "[U]nder duress, Klein moved the mailbox back to the distant location." *Id.* Other services deliver to Plaintiffs' properties, and the Postal Service continues to deliver the mail directly to properties on similar single-lane roads in Brown County. *Id.* ¶¶ 26, 29 (Page ID #52).

Seeking redress, Plaintiffs sued the Postal Service, Georgetown Postmaster Mary Mitchell, and Operations Manager Terrence Maney in federal district court in December 2024. R. 1 (Compl.) (Page ID #1–10). They filed their amended complaint, which asserts a "class of one" equal-protection claim, a few months later. R. 13 (FAC ¶¶ 31–35) (Page ID #53). Defendants moved to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). R. 16 (Mot. to Dismiss) (Page ID #59–68). The district court, finding that Plaintiffs' "dispute[] belong[s] exclusively before the Postal Regulatory Commission," granted the motion. R. 21 (Op. & Order at 10–11) (Page ID #94–95). Plaintiffs timely appealed. R. 23 (Notice of Appeal) (Page ID #97).

## II.  ANALYSIS

Because Defendants have lodged a facial challenge to the district court's subject matter jurisdiction, we "treat[] the facts alleged in the complaint as true" and review the district court's decision de novo.  *W6 Rest. Grp., Ltd. v. Loeffler*, 140 F.4th 344, 349 (6th Cir. 2025).

### A.  The *Thunder Basin* Framework

Plaintiffs allege that the Postal Service violated their constitutional right to equal protection.  And, as a general matter, 28 U.S.C. § 1331 "gives district courts authority over constitutional claims."  *Elgin v. Dep't of Treasury*, 567 U.S. 1, 9 (2012); *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Congress may, however, make exceptions to this general grant of jurisdiction, including by "creat[ing] procedures 'designed to permit agency expertise to be brought to bear on particular problems.'"  *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010) (quoting *Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Tr. Co.*, 379 U.S. 411, 420 (1965)).  When Congress creates such procedures, they are usually held "to be exclusive."  *Id.* (quoting *Whitney*, 379 U.S. at 420).

To determine whether an administrative review scheme divests a district court of jurisdiction over a constitutional claim, we employ a two-step process.  To begin the first step, we consider whether the review scheme would "'deny any judicial forum for a colorable constitutional claim,'" or whether it "simply channels judicial review of a constitutional claim to a particular court."  *Elgin*, 567 U.S. at 9 (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)).  In the former instance, "where Congress intends to preclude judicial review of constitutional claims" *entirely*, "its intent to do so must be clear."  *Id.* (quoting *Webster*, 486 U.S. at 603).  In the latter, we "instead ask[] only whether Congress' intent to preclude district court jurisdiction [is] 'fairly discernible in the statutory scheme.'"  *Id.* at 9–10 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)) (citation modified); *see also Krafsur v. Davenport*, 736 F.3d 1032, 1036 (6th Cir. 2013).

If such intent is fairly discernible, we proceed to step two, at which we consider three questions regarding the particular constitutional or statutory claim at issue:  (1) whether

"'a finding of preclusion could foreclose all meaningful judicial review'"; (2) whether "the suit is 'wholly collateral to a statute's review provisions'"; and (3) whether "the claim[] [is] 'outside the agency's expertise.'" *Free Enter. Fund*, 561 U.S. at 489 (quoting *Thunder Basin*, 510 U.S. at 212–13). These "three considerations[,] . . . commonly known now as the *Thunder Basin* factors," help courts determine "whether particular claims" concerning agency action are "'of the type Congress intended to be reviewed within th[e] statutory structure.'" *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 186 (2023) (quoting *Thunder Basin*, 510 U.S. at 212). "The first *Thunder Basin* factor recognizes that Congress rarely allows claims about agency action to escape effective judicial review." *Id.* "The second and third reflect in related ways the point of special review provisions—to give the agency a heightened role in the matters it customarily handles, and can apply distinctive knowledge to." *Id.*

Two pairs of Supreme Court decisions inform our application of this framework. We first consider *Thunder Basin* and *Elgin*. The former involved a coal company's challenge to a "Mine Act" requirement that the company provide its employees' representatives—in this case, non-employee union officials—with access to its workplace. 510 U.S. at 204–05. The company raised both statutory and constitutional objections to the Mine Act and its review scheme, which channeled enforcement challenges through the Federal Mine Safey and Health Review Commission. *Id.* at 205–06. The Court held that Congress intended the company's particular claim to proceed through the agency process, finding that (1) the "petitioner's statutory and constitutional claims . . . can be meaningfully addressed in the Court of Appeals," (2) the challenge was not collateral to the issue of the petitioner's rights and duties under the Mine Act, and (3) "'agency expertise [could] be brought to bear'" on the questions at issue. *Id.* at 214–15 (quoting *Whitney*, 379 U.S. at 420). *Elgin*, in turn, involved the Civil Service Reform Act's channeling of certain claims through the Merit Systems Protection Board ("MSPB"), with review by the Court of Appeals for the Federal Circuit. 567 U.S. at 5–6. The plaintiffs there, men who failed to register for the Selective Service, challenged their dismissals as unconstitutional sex-based discrimination. *Id.* at 6–8. After finding it "'fairly discernible' that Congress precluded district court jurisdiction," *id.* at 10, the Court considered the three *Thunder Basin* factors, *id.* at 16–23. Examining the review scheme in detail, the Court held that (1) the Federal Circuit stood ready to review the plaintiffs' constitutional claims; (2) the claims were not "wholly collateral"

because the "constitutional claims [were] the vehicle by which" the plaintiffs sought "to reverse the removal decisions"; and (3) the issues involved in their claims fell "squarely within the MSPB's expertise." *Id.* at 22–23.

The Supreme Court reached the opposite conclusion in *Free Enterprise Fund* and *Axon*, each of which involved "challenges . . . to the structure or very existence of an agency." *Axon*, 598 U.S. at 189. Because these challenges were "about subjection to an illegitimate proceeding," post-proceeding judicial review would "come too late to be meaningful." *Id.* at 191. The nature of the challenge in those cases was therefore also "collateral" because "[t]he parties' separation-of-powers claims d[id] not relate to the subject of the enforcement actions." *Id.* at 193. Finally, because the agencies in those cases knew "nothing special about the separation of powers," the claims clearly fell outside their expertise. *Id.* at 194.

## B. Step One

We begin with step one of the analysis, looking to whether the PAEA, "by specifying a different method to resolve claims about agency action," implicitly supplants § 1331's grant of jurisdiction. *Axon*, 598 U.S. at 185. To do so, we ask whether it is "fairly discernible" that Congress intended claims within the Commission's ambit to proceed exclusively through the PAEA's administrative review scheme. *Elgin*, 567 U.S. at 10. That is because, as in *Elgin*, the scheme does not completely foreclose judicial review of Plaintiffs' constitutional claims. *See id.* at 9–10. A party unhappy with the Commission's final decision has an unqualified right to seek review in the D.C. Circuit, 39 U.S.C. § 3663, which may decide whether the Commission's decision was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B).[2] Upon review of the PAEA's text, structure, context, and purpose, Congress's intent to supplant federal district court jurisdiction over those matters expressly placed within the Commission's purview is fairly discernible.

---

[2]We leave it to the Commission to decide in the first instance whether it may grant Plaintiffs relief on constitutional grounds, or whether it may only apply the framework in 39 U.S.C. § 403(c), which prevents "unreasonable discrimination," to the extent that provision's protections deviate from the Constitution's. We note, however, the Postal Service's concession at oral argument that whether or not the "Commission would opine on whether an act was constitutional or not," "the D.C. Circuit would indeed have jurisdiction . . . to decide this equal protection class of one claim." Oral Arg. Audio at 13:57–14:25.

*Text*. The PAEA established the Commission as a body of "5 Commissioners, appointed by the President, by and with the advice and consent of the Senate." 39 U.S.C. § 502. The Commission may consider "[r]ate and service complaints" arising under several statutory provisions, *id.* § 3662(a), including complaints that the Postal Service has engaged in "undue or unreasonable discrimination among users of the mails," *id.* § 403(c). Once a complaint is filed, the Commission may not dither—it must within 90 days either initiate proceedings or dismiss the complaint, and "issue a written statement setting forth the bases of its determination." *Id.* § 3662(b). The Commission may appoint from its ranks of its staff and Administrative Law Judges a presiding officer to manage a complaint, 39 C.F.R. § 3010.106, and it has enacted regulations governing the processing of such complaints, *id* §§ 3022.1–50. The presiding officers are empowered to "administer oaths, examine witnesses, take depositions, . . . receive evidence," "issue subpoenas," and "order the taking of depositions." 39 U.S.C. § 504(f)(1)–(2). If a complaint is ultimately found "to be justified," the Commission will require the Postal Service to take remedial action "in order to achieve compliance with the applicable requirements." *Id.* § 3662(c). After the conclusion of proceedings, any unsatisfied party may petition for review in the D.C. Circuit. *Id.* § 3663.

All this considered, we agree with the D.C. Circuit's recent holding that this text "contains all the hallmarks of a statutory scheme that precludes district court jurisdiction." *New York v. Trump*, --- F.4th ---, 2026 WL 2023744, at *3 (D.C. Cir. July 14, 2026). This comprehensive textual channeling of service- and rate-related grievances to the Commission strongly suggests that Congress intended that the Commission's jurisdiction over such complaints "[is] to be exclusive." *Free Enter. Fund*, 561 U.S. at 489 (quoting *Whitney*, 379 U.S. at 420).

Plaintiffs respond by arguing that § 3662(a)'s permissive language, which provides that an aggrieved party "*may* lodge a complaint," (emphasis added) suggests that Congress intended to allow an aggrieved party the choice between filing a complaint with the Commission or in federal district court. D. 22 (Appellant Br. at 14–15). We disagree, and read the use of "may" as simply indicating that the decision whether or not to file a complaint at all lies with the aggrieved party. The fact that a party "may lodge a complaint" with the Commission does not necessarily

mean that it may do so in any other way. This reading is consistent with ordinary English usage. We would not read a sign stating that job applicants "may schedule an interview during a timeslot on Wednesday" as implying that they may also schedule interviews on another day or may apply through some other means. And, as the D.C. Circuit noted in addressing the same argument, "other statutory schemes containing similar language" have been "found to preclude district court jurisdiction." *New York*, 2026 WL 2023744, at *3 (citing *Elgin*, 567 U.S. at 12–13; *Thunder Basin*, 510 U.S. at 207–08; *Miriyeva v. U.S. Citizenship & Immigr. Servs.*, 9 F.4th 935, 939–40 (D.C. Cir. 2021)). The civil-service scheme in *Elgin*, for instance, provides that "[a]n employee . . . *may* submit an appeal to the Merit Systems Protection Board." 5 U.S.C. § 7701(a) (emphasis added). We cannot agree with Plaintiffs that the similar language here merits a different result.

*Structure and context.* The Act's structure and the context in which it was enacted also support our conclusion. To start, 39 U.S.C. § 409(a), which provides for federal district court jurisdiction over actions by or against the Postal Service, limits that jurisdictional grant with the words "[e]xcept as otherwise provided in this title." This indicates that such exceptions exist in Title 39, or else the qualifying language would be unnecessary surplusage. And Plaintiffs do not identify (nor are we aware of) any other potential limitation apart from the provisions in §§ 3662–63, suggesting that these provisions provide the exception that § 409(a) references.

The interpretive context in which the PAEA was passed likewise demonstrates that §§ 3662–63 are exactly the limitations on jurisdiction Congress had in mind. Under the pre-PAEA version of the PRA, 39 U.S.C. § 409(a) read: "[e]xcept as provided in section 3628 of this title." PRA § 2, 84 Stat. at 725 (39 U.S.C. § 409(a)). Section 3628, in turn, was the pre-PAEA provision providing for appellate review of Postal Rate Commission proceedings. *Id.* at 763. This demonstrates an intent to divide potential claims against the Postal Service into two mutually exclusive categories: (1) those which may be filed in federal district court and (2) those which are cognizable on a petition for review in a federal court of appeals. Courts, including ours, therefore interpreted the PRA's original structure as precluding federal district court jurisdiction over rate- and service-related complaints. *See Enter., Inc. v. Bolger*, 774 F.2d 159, 161–62 (6th Cir. 1985) (per curiam); *Erickson v. U.S. Post Off.*, No. 06-186, 2006 WL 2583158,

at *2 (D. Minn. Sep. 7, 2006); *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799–801 (8th Cir. 2006); *Bovard v. U.S. Postal Serv.*, No. 94-6360, 1995 U.S. App. LEXIS 3846, at *3–4 (10th Cir. Feb. 24, 1995); *Village of Niles v. U.S. Postal Serv.*, No. 84 C 10102, 1985 WL 2900, at *4 (N.D. Ill. Sept. 30, 1985); *Tedesco v. U.S. Postal Serv.*, 553 F. Supp. 1387, 1390 (W.D. Pa. 1983). Our decision in *Enterprise, Inc.* was clear that this logic extended to complaints challenging a "mail rate or classification decision" on constitutional grounds. 774 F.2d at 161–62 (noting that "Congress can require that a constitutional challenge be made only under the special statutory procedure established in an act").

The PAEA, while expanding the Commission's authority, changing its name, and specifying the complaints encompassed by § 3662, largely preserved the PRA's review structure. By retaining—if not strengthening—this scheme, Congress may be presumed to have ratified the pre-PAEA judicial consensus. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)). If the PAEA Congress wanted to reopen district courts to cases like Plaintiffs', it could (and should) have made that clear.

*Purpose.* The legislative purpose and history underlying the 1970 and 2006 Acts also reveal Congress's intent that the Commission have exclusive jurisdiction over service- and rate-related complaints. *Elgin*, 567 U.S. at 10 ("To determine whether it is 'fairly discernible' that Congress precluded district court jurisdiction over petitioners' claims, we examine the CSRA's text, structure, and purpose."); *see also Axon*, 598 U.S. at 186 (looking to Congress's intent). The PRA set up the Postal Service as a self-governing and self-supporting business. *Franchise Tax Bd. v. U.S. Postal Serv.*, 467 U.S. 512, 519–20 (1984). And the PAEA vests in the Commission the day-to-day oversight of that business enterprise. *See* H.R. Rep. No. 109-66, pt. 1, at 52 (2005) (envisioning the Postal Regulatory Commission's "enhanced authority" to quickly and effectively "respond to complaints of pricing, service, or other actions by the Postal Service in violation of law"); *Enter. Inc.*, 774 F.3d at 161 (reviewing PRA's legislative history and finding "Congressional intent that even constitutional questions . . . should be raised initially at the agency level"). By allowing for accelerated and expert review of rate and service

complaints, the PRA and PAEA reduce the litigation burden that might arise from dealing with such matters in federal district court. *See LeMay*, 450 F.3d at 800 ("The PRA's legislative history shows that, in crafting the Act, Congress intended to minimize external intrusions on the Postal Service's managerial independence."). This "integrated scheme of review," which allows an expert body to deal with complaints covered by § 3662 in the first instance, could "be seriously undermined if, as [Plaintiffs] would have it," anyone unhappy with their local post office's operations could elude the Commission's jurisdiction by framing their complaint in constitutional terms. *Elgin*, 567 U.S. at 14.

We therefore hold at step one of the *Thunder Basin* framework that the PAEA gives the Commission, not federal district courts, jurisdiction over § 3662 complaints. And because Plaintiffs' complaint, at bottom, is one alleging "unreasonable discrimination among users of the mails," 39 U.S.C. § 403(c), it involves the "particular problems" over which the Commission's "procedures are to be exclusive," *Free Enter. Fund*, 561 U.S. at 489 (citation modified).

## C. Step Two

Plaintiffs fare no better at step two, because each of the three *Thunder Basin* factors indicates that this particular case belongs before the Postal Regulatory Commission. *First*, "preclusion of district court jurisdiction" will not "'foreclose all meaningful judicial review.'" *Axon*, 598 U.S. at 190 (quoting *Thunder Basin*, 510 U.S. at 212–13). Plaintiffs may present their claim to the Postal Regulatory Commission in the form of a complaint that "the Postal Service is not operating in conformance with the requirements of the provisions of section[] . . . 403(c)." 39 U.S.C. § 3662(a). They may incorporate into that complaint their constitutional claim that the Postal Service's refusal to deliver directly to their addresses violates their right to equal protection. The Commission must then either initiate proceedings on the complaint or dismiss it. *Id.* § 3662(b). If the Commission fails to act on the complaint, dismisses it, or if the proceedings end unfavorably, Plaintiffs may then seek review in the D.C. Circuit, *id.* §§ 3662(b), 3663, which stands ready to consider whether the Commission's actions were "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B); *see* 39 U.S.C. § 3663 (incorporating Administrative Procedure Act standard of review); *GameFly, Inc. v. Postal Regul. Comm'n*, 704 F.3d 145, 146 (D.C. Cir. 2013) (requiring Commission to remedy discriminatory Postal Service

rates under 39 U.S.C. § 403(c)).  There is thus little reason to question the D.C. Circuit's ability, affirmed by that court's own recent decision in *New York*, to searchingly review this sort of agency action.  2026 WL 2023744, at *4.

*Second*, far from being "wholly collateral to [the] statute's review provisions," Plaintiffs' equal-protection challenge mirrors the type of complaint the Commission is tasked with handling.  *Elgin*, 567 U.S. at 15 (quoting *Free Enter. Fund*, 561 U.S. at 489).  Plaintiffs do not, like the parties in *Free Enterprise Fund* or *Axon*, challenge the very authority of the Postal Regulatory Commission to act.  *See New York*, 2026 WL 2023744, at *6 (holding that claim there was "not like a structural constitutional claim, which would normally be resolved by courts").  Instead, Plaintiffs' "constitutional claims are the vehicle by which they seek to" litigate their claim that the Postal Service is improperly discriminating against them by failing to deliver down their street—a claim that fits comfortably within § 403(c)'s terms.  *Elgin*, 567 U.S. at 22.

The two claims may in fact be nearly identical.  To prevail on a "class of one" equal-protection challenge, Plaintiffs must show that they were "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).  This sounds quite a lot like § 403(c)'s prohibition on "unreasonable discrimination among users of the mails."  If anything, the constitutional claim presents a higher hurdle than the equivalent statutory claim, because "a 'class of one' theory requires proof of intentional discrimination." *Fouts v. Warren City Council*, 97 F.4th 459, 470 (6th Cir. 2024).  In any event, these similarities demonstrate the logic behind the second *Thunder Basin* factor.  Allowing for a "class of one" equal-protection claim to proceed in federal district court simply because a plaintiff claims it is "wholly collateral" to the statutory review scheme could wreak havoc on administrative review schemes everywhere.  An enterprising plaintiff could reframe just about any arbitrary-and-capricious challenge or other complaint as a claim that an agency treated them differently with no rational basis, *see Olech*, 528 U.S. at 564, thus circumventing congressional efforts to require agency review.

*Third*, Plaintiffs' constitutional claims do not fall outside the Postal Regulatory Commission's expertise.  *See Elgin*, 567 U.S. at 22–23.  To be sure, the Commission is not

expert in constitutional law, but neither was the MSPB in *Elgin* or the Federal Mine Safety and Health Commission in *Thunder Basin*. *See id.*; *Thunder Basin*, 510 U.S. at 214–15. Its expertise on matters postal may nevertheless be "brought to bear" on the issues at hand, including whether any rational basis exists for the Postal Service's refusal to deliver on Hillman Ridge Road. *Elgin*, 567 U.S. at 23 (quoting *Thunder Basin*, 510 U.S. at 215). That factual question is at the core of determining whether any violation, constitutional or statutory, occurred. In this respect, the Commission "can apply distinctive knowledge" not possessed by federal district courts. *Axon*, 598 U.S. at 186.

All three *Thunder Basin* factors therefore indicate that Plaintiffs' "claim is 'of the type' Congress thought belonged within [the] statutory scheme." *Axon*, 598 U.S. at 188–89 (quoting *Thunder Basin*, 510 U.S. at 212). This helps explain why courts, including ours, have all held that the Commission has exclusive jurisdiction over claims like Plaintiffs', even when they are framed as constitutional issues. *See, e.g.*, *Torp v. United States*, No. 21-1422, 2022 U.S. App. LEXIS 2824, at *5–7 (6th Cir. Jan. 31, 2022) (order); *White v. U.S. Post Off.*, No. 23-1239, 2024 WL 2973705, at *2 (10th Cir. June 13, 2024); *Glover v. Thompson*, No. 20-10313, 2022 WL 2405362, at *3–5 (E.D. Mich. Jan. 11, 2022); *Pep-Wku, LLC v. U.S. Postal Serv.*, No. 1:20-cv-9, 2020 WL 2090514, at *2–3 (W.D. Ky. Apr. 30, 2020); *Powell v. U.S. Postal Serv.*, No. 15-12913-FDS, 2016 U.S. Dist. LEXIS 12175, at *3–5 (D. Mass. Feb. 2, 2016). We agree with those decisions and hold that a plaintiff bringing a "class of one" equal-protection challenge to the Postal Service's "services. . . [,] classifications, rates, [or] fees" must do so by filing a complaint with the Commission. 39 U.S.C. §§ 403(c), 3662.

## III. CONCLUSION

For these reasons, we AFFIRM the district court's dismissal of Plaintiffs' complaint for lack of jurisdiction.